■ EDWARD GOTTLIEB, INC., Respondent, v CITY AND COMMERCIAL COMMUNICATIONS PLC, Appellant. [606 NYS2d 148] —Order of the Supreme Court, New York County (Edward H. Lehner, J.), entered February 5, 1993, which denied defendant's motion for summary judgment dismissing the complaint, is unanimously reversed, on the law, and the motion granted, with costs and disbursements payable by plaintiff. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint, with costs.

Plaintiff's principal Edward Gottlieb is a consultant in the area of public relations who arranges mergers and assists persons seeking to acquire companies in the public relations field. Defendant City and Commercial Communications PLC ("C&CC") is a financial and investor relations consulting firm with its primary offices located in the United Kingdom. This action was commenced by plaintiff to recover $560,000 which it claims is due as a result of C&CC's acquisition of a company called Georgeson & Company, Inc. ("Georgeson") for $50,000,000.

Plaintiff's claims stem from a letter agreement dated August 23, 1988. The agreement acknowledges that Gottlieb had met with C&CC's Anthony Canning the previous day and that Canning had agreed on behalf of C&CC that plaintiff would act as its consultant with respect to possible acquisitions and with respect to executive recruiting. Pursuant to the letter agreement, defendant agreed to pay plaintiff $2,000 as an advance against plaintiff's $250 per hour fees. In addition, the letter agreement provided that plaintiff would be paid a "bonus" in the event C&CC acquired a firm introduced or recommended by it.

The complaint alleges that plaintiff "recommended" Georgeson to defendant and therefore is entitled to the bonus fee.

In support of defendant's motion for summary judgment, Canning submitted an affidavit stating that he met with Georgeson's Chief Executive Officer, Richard Nye on June 23, 1988 to discuss the possible acquisition of Georgeson by C&CC. This meeting took place two months *before* he met with plaintiff's principal, Gottlieb, on August 22, 1988. Canning affirmed that at this August 22, 1988 meeting, Gottlieb expressed an interest in providing consulting services to C&CC in connection with the latter's acquisition efforts, and described the "lengthy process" that he would undertake as a consultant prior to recommending any acquisition candidate, including but not limited to researching and targeting specific firms; setting up necessary meetings between target firms and C&CC, obtaining financial and other materials about the target firms, and performing "due diligence" investigations with respect to the target firms. Canning stated that the August 23, 1988 letter agreement was the result of this luncheon, and that it placed no restrictions on his ability to contact acquisition candidates independently. He also stated that following the agreement, plaintiff provided C&CC with financial and non-financial information with respect to two companies, Shareholder Communications and Kisel, Blake, which ultimately, C&CC decided not to acquire. C&CC paid plaintiff in full for the services it rendered in connection with these companies at its hourly rate. Canning stated that plaintiff did not provide any financial or other information with respect to Georgeson, nor did it set up any meetings between Georgeson and C&CC representatives. Canning additionally stated that no consultant was involved in the communications which ultimately led to the acquisition of Georgeson.

Also in support of the motion, defendant submitted transcripts of the deposition testimony of a number of individuals, including Gottlieb. Gottlieb testified that in or around September 1987 he received a call from an individual named Len Baker from London who informed Gottlieb that he had met with an individual named Canning who was interested in purchasing Georgeson Company. Baker asked Canning whether or not Georgeson had already made a deal with a firm called Valen Polin. Gottlieb testified that he "checked this out" and responded by sending a letter dated September 28, 1987 directly to Canning informing Canning that Georgeson was not "tied up" with Valen Polin but had an agreement with Valen Polin on "mutual business". Gottlieb testified that

at the time he wrote the letter he had no business relationship with C&CC, and that he wrote the letter to "do him a favor" and to "hopefully get business from him."

Gottlieb testified that he tried to "keep tabs" on C&CC's activities between 1987 and 1988 through an individual named Jim Donley but that he was not asked to meet with Canning again until August 1988 when Donley invited him to luncheon with Canning at the Polo Club on August 22, 1988. Gottlieb claims that during this luncheon meeting, he mentioned Georgeson as a possible candidate along with other companies or firms. Gottlieb stated that Canning raised a question about whether Georgeson was still available and he responded that it was worth checking out again. Gottlieb testified that Canning did not authorize him to go any further with respect to Georgeson. He testified that Canning suggested that plaintiff work on the other firms, and that he never did anything to check out the availability of Georgeson after that time. Gottlieb testified that after the agreement was signed, he never did anything to check out the availability of Georgeson, that Canning specifically did not want plaintiff to do any work with respect to Georgeson, and that he never did any type of write-up or recommendation of Georgeson to Canning. Gottlieb further testified that plaintiff was paid in accordance with the letter agreement for the work that he performed for C&CC with respect to Shareholder Communications and Kisel, Blake, and that he did not know anything about C&CC's acquisition of Georgeson until the information went public.

Defendant also excerpted and submitted, among other things, copies of the deposition testimony of Richard Nye who testified that Georgeson had no agreement for "mutual business" with Valen Polin in 1987 as stated by Gottlieb in his letter to Canning; that he met with Canning for the first time to discuss the merger in June 1988; that the only other person with whom he discussed the possibility of a merger was an individual named Frank Britto who encouraged him to try to make an international link in order to stay competitive after Valen Polin acquired the Carter Company; and that to his knowledge, there was no broker or finder involved in the transaction between Georgeson and C&CC.

In opposition to defendant's summary judgment motion, Gottlieb submitted an affidavit in which Gottlieb asserted that the reason the August 23, 1988 letter agreement was worded to provide that plaintiff would receive bonus compensation if it "introduced or recommended" a company was that:

"6. * * * On a prior occasion, EGI performed services for

C&CC's principal CEO, Mr. Anthony C.C. Canning ('Canning'), that was not pursuant to any written agreement, and hence EGI did not request nor did it receive compensation. The services were an acquisition recommendation.

"7. This activity occurred in 1986".

Gottlieb asserted further that at the August 22, 1988 luncheon, he "made several recommendations, including the highly esteemed Georgeson", and that he "recommended" Georgeson at a meeting with Canning on September 7, 1988. Both times Canning responded in the negative. Gottlieb further asserted that had he chosen to, Canning could explicitly have omitted Georgeson from the ambit of the letter agreement.

The IAS Court denied defendant's motion for summary judgment, stating that a triable issue of fact had been presented as to whether plaintiff was entitled to the bonus fee under the "introduced or recommended" language of the letter agreement.

Plaintiff would not be entitled to any compensation due to its "investigation" with respect to Georgeson *prior* to the August 23, 1988 letter agreement. Gottlieb admitted that plaintiff had no legal relationship with C&CC at that time. In addition, plaintiff's claim that it is entitled to the "bonus fee" of $560,000, without performing any services, simply because its principal mentioned the name Georgeson twice (once before there was any contract between the parties), is contrary to experience and reason.

The evidence submitted by the parties clearly demonstrates that Canning was contemplating an acquisition of Georgeson in 1987, and had initiated negotiations with Georgeson's CEO two months prior to his first meeting with Gottlieb in August 1988. The fact that Gottlieb had prior knowledge that C&CC was interested in acquiring Georgeson merely created a fortuitous opportunity for Gottlieb to interject that name into the conversation to which he admittedly received a negative response. It is uncontroverted that Canning did not authorize Gottlieb to proceed in any way with respect to Georgeson, and that Gottlieb did no research, investigation or due diligence report of any kind with respect to Georgeson subsequent to the parties' agreement. Under these circumstances there is no evidence of a "direct and proximate link" between the actions of Gottlieb and the consummated transaction *(Greene v Hellman,* 51 NY2d 197, 206). Plaintiff could not earn a broker's fee as a "procuring cause of the [transaction]" *(supra,* at 206)

simply because Gottlieb "recommended" a company to defendant with which it *already* was in negotiation. No issue of fact, therefore, was raised as to whether plaintiff played any role whatsoever in bringing Georgeson and C&CC together, or in advancing the negotiations or facilitating the acquisition.

Finally, plaintiff is also not entitled to a "finder's fee". There must be some "continuing connection between plaintiff's initial efforts and the merger that came about" *(Simon v Electrospace Corp.,* 28 NY2d 136, 142). Here, it is undisputed that defendant's Canning had met with the principal of Georgeson in June 1988, two months before Gottlieb claims he first mentioned the Georgeson name to Canning. Thus, no issue of fact was raised as to whether defendant's acquisition of Georgeson was a direct result of plaintiff's disclosure of the opportunity to defendant. Plaintiff failed to meet its burden, upon the motion, of showing that *any* of *its* efforts even brought the parties together. Concur—Wallach, J. P., Ross, Asch and Rubin, JJ.