■ MULTI CAPITAL GROUP LLC, Appellant, v MARK KARASICK et al., Respondents. [52 NYS3d 37]—

Judgment, Supreme Court, New York (Shirley Werner Kornreich, J.), entered September 25, 2015, dismissing the complaint with prejudice, unanimously affirmed, with costs.

In June 2007, plaintiff, Multi Capital Group, LLC, a real estate investment banking firm, submitted an offer to purchase the U.S. Steel Tower building, located in Pittsburgh, Pennsylvania. At the time, the asking price for the building was approximately $348 million, and plaintiff was unable to finance the purchase by itself. Shortly thereafter, plaintiff's representative met defendants Harry Skydell and Mark Karasick, real estate investors, who began discussions about purchasing the building. Plaintiff claims that, in return for a fee, it agreed to introduce defendants to the building's owner and real estate broker, and would provide services to defendants to facilitate acquisition of the building.

On July 13, 2007, plaintiff sent two emails to defendants asking to "confirm the fee structure" that the parties had previously discussed—namely, that plaintiff would receive a finder's fee equal to 1% of the purchase price. The parties thereafter exchanged multiple drafts of a fee agreement that stated

plaintiff would receive a $2 million finder's fee. No written agreement was ever executed by the parties. In 2008, the negotiations for defendants' purchase of the building ended because the seller and defendants could not agree on the value of the building.

In 2011, nearly four years after the parties' 2007 fee negotiations had ended, defendants met with a real estate consultant—someone with no affiliation with plaintiff—who independently introduced them to the building's owner. Defendants ultimately bought the building from the owner that year for $289 million—approximately $60 million less than the $348 million that the seller had asked for in 2007. Defendants did not pay a fee to plaintiff.

Plaintiff then commenced this action seeking a finder's fee alleging that without its efforts, defendants would never have become aware of the opportunity to buy the property, and the purchase would never have occurred. Plaintiff asserted causes of action for breach of contract, unjust enrichment and promissory estoppel, and sought $2 million in damages from defendants.

Defendants moved to dismiss the complaint pursuant to CPLR 3211. The court denied that motion, finding that the documentary evidence submitted by plaintiff in opposition raised factual issues as to whether defendants may have contracted to pay plaintiff a finder's fee or may have agreed to pay plaintiff a fee to give up its interest in the deal.

Defendants answered and upon completion of discovery, moved for summary judgment dismissing the complaint. Defendants argued that after 2007, plaintiff had no involvement in the negotiations leading up to the ultimate purchase of the building in 2011. Defendants further asserted that individuals with no connection to plaintiff had initiated and facilitated the defendants' 2011 purchase of the building.

Defendants established as a matter of law that plaintiff was not entitled to a finder's fee. Although the parties exchanged drafts of a finder's fee agreement, they never executed a final written agreement. Moreover, there was no connection between plaintiff's purchase opportunity and the transaction several years later. On the contrary, the record shows that defendants bought the building through the actions of real estate professionals who had no affiliation whatsoever with plaintiff (*see e.g. Edward Gottlieb, Inc. v City & Commercial Communications*, 200 AD2d 395, 399 [1st Dept 1994]). The motion court also properly determined that plaintiff was not otherwise entitled to compensation from defendants. The record is clear

that defendants never agreed that plaintiff was entitled to any fee, as their broker or otherwise. Concur—Tom, J.P., Sweeny, Renwick, Moskowitz and Kapnick, JJ.